UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

M‍ERCH T‍RAFFIC, LLC,

    P‍LAINTIFF,

V.

T‍HE P‍ARTNERSHIPS I‍DENTIFIED ON S‍CHEDULE A,

    D‍EFENDANTS.

C‍ASE N‍O.: 1:25-‍CV-10239

**COMPLAINT**

Plaintiff, Merch Traffic, LLC ("Merch Traffic" or "Plaintiff"), by its undersigned counsel, hereby complains of the Partnerships identified on Schedule A, attached hereto (collectively, "Defendants"), which at least use the online marketplace accounts identified on Schedule A (collectively, the "Defendant Internet Stores" or "Seller Aliases"), and for its Complaint hereby alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, 15 U.S.C. § 1125, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. This Court also has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. This Court has personal jurisdiction over Defendants, in that Defendants conduct significant business in Illinois and in this Judicial District, and the acts and events giving rise to

1

this lawsuit, of which Defendants stand accused, were undertaken in Illinois and within this Judicial District.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, since Defendants directly target consumers in the United States, including Illinois, through the fully interactive, commercial Internet stores operating under the Defendant Internet Stores. Defendants are committing tortious acts, engaging in interstate commerce, and have wrongfully caused substantial injury in the State of Illinois.

## JOINDER

4. Joinder is proper pursuant to Federal Rule of Civil Procedure 20(a)(2) as Plaintiff's right to relief stems from the same series of transactions or occurrences, and questions of law and/or fact common to all defendants will arise in the action.

5. Plaintiff has filed, as **Exhibit 2** attached hereto, its Schedule A list of Seller Aliases including the defendant store names and online marketplace accounts found to be selling counterfeit products. However, the true identities of the defendants – i.e., the individuals and/or entities operating the Seller Aliases – are not yet known.

6. In Plaintiff's experience, a significant number of Seller Aliases included in Schedule A are operated by the same individual and/or entity. It is not until the third-party marketplaces produce the registration data for these stores that the Plaintiff discovers the identity or identities of the individuals and/or entities operating the online marketplace accounts under the Seller Aliases.

7. Given the similarities between the Defendant Internet Stores discussed *infra* and the likelihood that many, if not all, are operated by the same individual and/or entity, and for purposes of judicial efficiency, Plaintiff asserts that joinder of all defendants is proper at this stage as severing

the case would mean that multiple stores with the same operator would be adjudicated piecemeal and/or would need to be re-joined at a later date.

## INTRODUCTION

8. This action has been filed to combat the online trademark infringement and counterfeiting activity of Defendants, who trade upon Plaintiff's valuable trademarks by selling and/or offering for sale unauthorized, inauthentic, infringing, and counterfeit products in connection with Plaintiff's federally registered trademarks.

9. Plaintiff is the exclusive licensee in the U.S. to sell merchandise for the music artist, Madonna Louise Ciccone ("Madonna"). Plaintiff operates as a merchandiser, licensing agent, and intellectual property enforcement agent with regards to merchandise related to Madonna.

10. Madonna is the owner of the federally registered Madonna Trademarks, listed in the table below – true and correct copies of which are attached hereto as **Exhibit 1** (collectively referred to as the "Madonna Trademarks" and "Trademark Registrations").

| \\multicolumn{4}{c}{TRADEMARK REGISTRATIONS} |
|---|---|---|---|
| REG. NO. | MARK | CLASS(ES) OF GOODS & SERVICES | REG. DATE |
| 1,473,554 | MADONNA | IC 041: Entertainment services -namely, live and recorded musical, dance and dramatic performances. | Jan. 19, 1988 |
| 1,463,601 | MADONNA | IC 025: Clothing - namely, t-shirts, vests, sweatshirts, tops, pants and dresses | Nov. 03, 1987 |
| 5,428,624 | MDNA | IC 010: Massage apparatus; Electric esthetic facial equipment for household purposes, namely, electric esthetic facial toning machines for household purposes; Household facial equipment for sanitary purposes, namely, esthetic facial toning machines for household purposes, facial skin massage apparatus, Gua Sha massage tool | Mar. 20, 2018 |
| 5,692,602 | MDNA SKIN | IC 003: Non-medicated soap; Cosmetic preparations, namely, skin cleansing foam and skin powder; Skin cream; Skin cleansing oil, cream, water and lotion; Skin toner, Skin astringent lotion; Skin balancing lotion; Skin brightening lotion; Nourishing skin care masks; Skin massage cream; Non-medicated skin serum; Skin emulsions; Skin emollient creams; Anti-wrinkle creams; Personal care products, namely, body lotions, soap, hand cream, slimming gel | Mar. 05, 2019 |

| REG. NO. | MARK | CLASS(ES) OF GOODS & SERVICES | REG. DATE |
|---|---|---|---|
| | | IC 010: Massage apparatus; Electric esthetic facial equipment for household purposes, namely, electric esthetic facial toning machines for household purposes; Esthetic roller for household purposes, namely, hand-operated esthetic massage roller for household purposes; Esthetic facial roller for household purposes, namely, hand-operated esthetic facial massage roller for household purposes; Household facial equipment for sanitary purposes, namely, esthetic facial toning machines for household purposes<br><br>IC 021: Cosmetic application utensils, namely, hand-operated cosmetic rollers, cosmetic brushes, facial cleansing brushes<br><br>IC 035: Retail store services and wholesale store services featuring cosmetics, skin care products, personal care products, and cosmetic utensils | |

11. In an effort to illegally and deceptively profit from the Madonna Trademarks, Defendants created numerous Defendant Internet Stores, intentionally designed in look, feeling, and suggestion, to give the impression to consumers that they are legitimate websites and merchants selling products manufactured or authorized by Plaintiff, with Defendants' ultimate intention being to deceive unknowing consumers into purchasing products which are unauthorized and infringe upon the Madonna Trademarks (hereinafter referred to as "Counterfeit Products").

12. Defendant Internet Stores share unique identifiers, such as design elements and similarities of unauthorized products offered for sale, establishing a logical relationship between the Defendants, and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their operation.

13. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, tarnishment, loss of control over its creative content, and loss of exclusivity over its valuable trademarks as a result of Defendants' actions and is thus seeking injunctive and monetary relief.

## THE PLAINTIFF

14. Plaintiff is a limited liability company registered in Delaware with headquarters in New York, New York. Plaintiff operates as a merchandiser, licensing agent, and intellectual property enforcement agent with regards to merchandise related to Madonna. Plaintiff is the exclusive licensee for Madonna merchandise in the U.S.

15. Madonna is the most successful female recording artist of all time. Known as the Queen of Pop, Madonna created some of the most famous and popular songs of the last 40 years, including Holiday, Like A Virgin, Vogue, Express Yourself, Like A Prayer, and Music, often infusing pop, dance, and techno with political or religious messaging. She pioneered innovation and self-reinvention, pushing the boundaries, and demanding attention. In doing so, she has acquired millions of fans throughout the world.

16. Madonna is not only a brilliant artist and songwriter, but an actor, activist, and entrepreneur. In addition to her music, she has found success as an actor in films such as A League of Their Own, Dick Tracy, and Evita; the latter of which earned Madonna the Golden Globe for Best Actress for her portrayal of Eva Perón. Madonna also created Maverick Records which is one of the most successful artist-run record labels in history.

17. Madonna has achieved a level of success many can only dream of – she is truly a household name and a cultural phenomenon. Her albums, tours, and films have grossed multi-million dollars internationally.

18. Madonna products include merchandise comprising clothing, posters, and other various items which are distributed and sold to consumers throughout the United States (hereinafter the "Madonna Products"). Madonna Products include at least one of the registered

Madonna Trademarks.

19. The Madonna Trademarks: are inherently distinctive, valid, subsisting, in full force and effect, and incontestable; have been used exclusively and continuously; qualify as famous marks, and identify products as merchandise originating from Plaintiff. The Trademark Registrations constitute *prima facie* evidence of their validity and of Madonna's exclusive right to use the Madonna Trademarks pursuant to 15 U.S.C. § 1057(b). Since their creation, Madonna Trademarks have been used exclusively by Madonna and Merch Traffic and have never been abandoned. As Madonna's merchandiser, exclusive licensee, and intellectual property enforcement agent, Plaintiff is authorized to enforce these rights.

20. As a result of long-standing use of the Madonna Trademarks, which stretches over a forty-year period, strong common law trademark rights have amassed in the marks. Merch Traffic's use of the Madonna Trademarks has also built substantial goodwill in and to the Madonna Trademarks. The Madonna Trademarks are famous marks and the exclusive rights to utilize the Madonna Trademarks are valuable assets of Merch Traffic.

21. Merch Traffic has invested substantial time, money, and effort in building up and developing consumer recognition, awareness, and goodwill in the Madonna Products. Madonna Trademarks and Madonna Products have been the subject of continuous marketing and promotion by Plaintiff in the industry and to consumers. As a result, Madonna Products are widely known and recognizable and are exclusively associated by consumers, the public, and the trade as sourced by the Plaintiff. The recognition and goodwill associated with the brand is of incalculable and inestimable value to the Plaintiff.

22. Merch Traffic is the only business authorized to manufacture, import, export,

advertise, offer for sale, or sell any goods utilizing or featuring the Madonna Trademarks in the U.S. Plaintiff has not licensed or authorized Defendants to use the Madonna Trademarks and/or to sell the Madonna Products.

## THE DEFENDANTS

23. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including this Judicial District, through the operation of fully interactive commercial websites and online marketplace accounts operating under the Defendant Internet Stores. Defendants target the United States, including Illinois, and have offered to sell and, on information and belief, have sold and continue to sell Counterfeit Products to consumers within the United States and this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

24. The success and widespread popularity of Madonna has resulted in significant counterfeiting. Plaintiff has identified numerous interactive ecommerce stores and marketplace listings, including the Defendant Internet Stores, which are offering for sale, selling, and importing Counterfeit Products to consumers throughout the United States. These Defendant Internet Stores are operated on platforms which include, but are not limited to, those operated by: Alibaba Group Holding. Ltd. ("Alibaba"); AliExpress.com ("AliExpress"); eBay, Inc ("eBay"), Etsy, Inc ("Etsy"), Printblur.com ("Printblur"), Printerval.com ("Printerval"), Shopify Inc. ("Shopify"), and WhaleCo, Inc. d/b/a Temu ("Temu") (collectively referred to herein as "Online Marketplaces").

25. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $350 billion in annual online sales.[1] According to an

---

[1] See "2020 Review of Notorious Markets for Counterfeiting and Piracy," OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, Executive Office of the President. 85 FR 62006 (October 1, 2020).

intellectual property rights seizures statistics report issued by Homeland Security and the U.S. Customs and Border Protection, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in the fiscal year 2020 was over $1.3 billion.[2] Internet websites and e-commerce stores like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.*

26. As addressed in the *New York Times* and by the U.S. Dept. of Homeland Security, and as reflected in the increase of federal lawsuits filed against sellers offering for sale and selling infringing and/or counterfeit products on the above mentioned digital Online Marketplaces, an astronomical number of counterfeit and infringing products are offered for sale and sold on these digital marketplaces at a rampant rate.[3]

27. Upon information and belief, Defendants facilitate sales by designing their Defendant Internet Stores to appear to unknowing consumers as authorized online retailers selling genuine Madonna Products through the use of Madonna Trademarks. The Defendant Internet Stores perpetuate an illusion of legitimacy using indicia of authenticity and security that consumers have come to associate with authorized retailers.

28. Upon information and belief, Defendants also deceive unknowing consumers by using the Madonna Trademarks without authorization within the content, text, and/or metatags of their websites, in order to attract and manipulate search engines into identifying the Defendants

---

[2] *See* "Intellectual Property Rights Fiscal Year 2020 Seizure Statistics," U.S. CUSTOMS AND BORDER PROTECTION. CBP Publication No. 1542-092 (September 21, 2021).
[3] *See* Ganda Suthivarakom, *Welcome to the Era of Fake Products*, N.Y. TIMES (Feb. 11, 2020), https://www.nytimes.com/wirecutter/blog/amazon-counterfeit-fake-products/. *See also Combating Trafficking in Counterfeit and Pirated Goods*, U.S. DEPT. OF HOMELAND SECURITY (Jan. 24, 2020), available at https://www.dhs.gov/sites/default/ files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf.

Internet Stores as legitimate websites for authentic Madonna Products. These tactics are meant to, and are successful in, misdirecting consumers who are searching for genuine Madonna Products.

29. Upon information and belief, Defendants operate in a collective and organized manner, often monitor trademark infringement litigation alert websites, are in continuous and active concert with one another, are in frequent communication with each other – utilizing online chat platforms and groups, and use these collective efforts in an attempt to avoid liability and intellectual property enforcement efforts. Furthermore, there is a substantial evidentiary overlap in Defendants' behavior, conduct, and individual acts of infringement, thus constituting a collective enterprise.

30. Defendants go to great lengths to conceal their identities often using fictitious names and addresses to register and operate their massive network. For example, many of Defendants' names and physical addresses used to register the Defendant Internet Stores are incomplete. Other Defendants use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed on Schedule A as well as other unknown fictitious names and addresses. These are some of the common tactics used by Defendants to conceal their identities, the full scope and interworking of their massive infringing operation, and to avoid being shut down.

31. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores, including, but by no means limited to: (1) virtually identical layouts, even though different aliases were used to register the respective online marketplace accounts; (2) similarities of the Counterfeit Products, and indicia of being related to one another, suggesting that the illegal products were manufactured by and come from a common source and that Defendants are interrelated; and, (3) other notable common features such as same naming

conventions, registration patterns, accepted payment methods, check-out methods, metadata, lack of contact information, identically or similarly priced items, and the use of the same text and images.

32. Further, illegal operators, like Defendants, typically operate multiple payment processor and merchant accounts, including but not limited to, one or more financial accounts operated through various payment platforms such as PayPal, Inc. ("PayPal"), Payoneer, Inc. ("Payoneer"), Stripe, Inc. ("Stripe"), and Alipay US, Inc. ("Alipay") (collectively referred to herein as "Payment Processors"), and hide behind layers of payment gateways so they can continue operation in spite of any enforcement efforts. Additionally, as financial transaction logs in previous similar cases have shown, Defendants often maintain offshore bank accounts and regularly move funds from their Payment Processor accounts to said offshore bank accounts, outside the jurisdiction of this Court.

33. Defendants, without any authorization or license, have knowingly and willfully infringed the Madonna Trademarks in connection with the manufacturing, advertisement, distribution, offering for sale, and sale of illegal, infringing, and counterfeit products into the United States and Illinois.

34. In committing these acts, Defendants have, willfully and in bad faith, committed the following, all of which have and will continue to cause irreparable harm to the Plaintiff: infringed upon and used counterfeit versions of the Madonna Trademarks; created, manufactured, sold, and/or offered to sell Counterfeit Products which infringe upon the Madonna Trademarks; used Madonna Trademarks in an unauthorized manner in order to sell, advertise, describe, mislead, and deceive consumers; engaged in unfair competition; and unfairly and unjustly profited from such activities at the expense of the Plaintiff.

35. Plaintiff does not yet know the full extent and identity of the channels through which Defendants source and sell the Counterfeit Products. Defendants directed, supervised, and/or controlled activity infringing on Plaintiff's Trademarks and the sale of Counterfeit Products. Defendants have a direct financial interest in, and gain a direct financial benefit from, infringing activity and realize profits from the sale of Counterfeit Products.

36. By engaging in the illegal conduct outlined herein, in addition to directly organizing and effectuating such infringing activities, Defendants also induced, caused, and materially contributed to infringing conduct by others, including the other Defendants. There is a causal relationship between the infringing activity and the financial benefit reaped by Defendants.

37. Unless enjoined, Defendants will continue to cause irreparable harm to Merch Traffic.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

38. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

39. Plaintiff is the enforcement agent and exclusive licensee of the federally registered Madonna Trademarks. The Madonna Trademarks have significant value to the Plaintiff.

40. Defendants have used the Madonna Trademarks without authorization in commerce and/or offered Counterfeit Products featuring the federally registered Madonna Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of Counterfeit Products.

41. Without the authorization or consent of the Plaintiff, and with knowledge of Plaintiff's well-known ownership rights in its Madonna Trademarks, and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced,

11

copied, and/or colorably imitated the Madonna Trademarks and/or used spurious designations that are identical with, or substantially indistinguishable from, the Madonna Trademarks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of Counterfeit Products.

42. Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold their Counterfeit Products to the purchasing public in direct competition with Merch Traffic and the Madonna Products, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Madonna Trademarks through their participation in such activities.

43. Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of the Madonna Trademarks to packaging, point-of-purchase materials, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public, and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with, or are otherwise authorized by Merch Traffic, LLC, through which Defendants make substantial profits and gains to which they are not entitled in law or equity.

44. Defendants' unauthorized use of the Madonna Trademarks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Merch Traffic, LLC, and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Madonna Trademarks.

45. Defendants intentionally induce others to infringe upon Plaintiff's trademarks and/or continues to supply services with the knowledge that the recipient is using such services to engage in such trademark infringement. Defendants have the right and ability to supervise the infringing activity and have an obvious and direct financial interest in the counterfeit activity.

46. Defendants' actions constitute willful counterfeiting of the Madonna Trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

47. Defendants' continued intentional use of the Madonna Trademarks without the consent or authorization of Merch Traffic, LLC, constitutes intentional infringement of the Madonna Trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

48. As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss, irreparable injury, and damage to Plaintiff, its business, its reputation, and its valuable rights in and to the Madonna Trademarks and the goodwill associated therewith, in an amount as yet unknown. Plaintiff has no adequate remedy at law for this injury, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss, and damage to Plaintiff and its valuable Madonna Trademarks.

49. Based on Defendants' actions as alleged herein, Merch Traffic is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as well as all gains, profits, and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages, and/or statutory damages of up to $2,000,000 per-counterfeit mark per-type of goods sold, offered for sale, or distributed, and reasonable attorneys' fees and costs.

## COUNT II
## FALSE DESIGNATION OF ORIGIN, PASSING OFF, & UNFAIRCOMPETITION
## (15 U.S.C. § 1125(a)/LANHAM ACT § 43(a))

50. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

51. Plaintiff, as the enforcement agent and exclusive- holder of all right, title, and interest in and to the Madonna Trademarks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

52. The Madonna Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office on the Principal Register; the Madonna Trademarks have been continuously used and have never been abandoned; the registrations for the Madonna Trademarks are valid, subsisting, and in full force and effect; and many are incontestable pursuant to 15 U.S.C. § 1065.

53. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and continues to create a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff..

54. By using the Madonna Trademarks in connection with the sale of unauthorized products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the unauthorized products.

55. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the unauthorized products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

56. Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, and intended to cause confusion, to cause mistake, and to deceive the purchasing public, with the intent to trade on the goodwill and reputation of Merch Traffic, its Madonna Products, and Madonna Trademarks.

57. As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Merch Traffic by depriving Plaintiff of sales of its Madonna Products and by depriving Merch Traffic of the value of its Madonna Trademarks as commercial assets in an amount as yet unknown.

58. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

**COUNT III**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS § 510, *et seq*.)**

59. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

60. Defendants have engaged in acts violating Illinois law, including, but not limited to, passing off their Counterfeit Products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of Defendants' goods, thus causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Madonna Products, through Defendants' representation that Defendants' Counterfeit Products have Plaintiff's approval, when they do not.

61. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

62. The conduct of each Defendant is causing Plaintiff great and irreparable injury and, unless enjoined and restrained by this Court, Defendants will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured monetarily. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

63. Further, as a direct result of the Defendants' acts of trademark infringement, Defendants have obtained profits they would not have otherwise realized but for their infringement of Plaintiff's Trademarks.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the Madonna Trademarks or any reproductions, copies, or colorable imitations thereof, in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized Madonna Product, or is not authorized by Plaintiff to be sold in connection with the Madonna Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale using Madonna Trademarks;

    c. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff to be sold or offered for sale, and which bear the Madonna Trademarks;

    d. further infringing the Madonna Trademarks and damaging Plaintiff's goodwill;

    e. using, linking to, transferring, selling, exercising control over the Defendant Internet Stores, Defendants' product listings, or any other domain name or online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which bear the Madonna Trademarks;

    f. operating and/or hosting websites at the Defendant Internet Stores, and any other online marketplaces or domain names registered to or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of products or inventory not authorized by Plaintiff which bear the Madonna Trademarks;

2) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any Online Marketplaces and Payment Processors, and any related entities, social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing, and Yahoo, web hosts for the Defendant Internet Stores, and domain name registrars, shall:

    a. disable and cease providing services for any accounts through which Defendants engage in the sale of products not authorized by Plaintiff which bear the Madonna Trademarks, including any accounts associated with Defendants on Schedule A;

  b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products not authorized by Plaintiff which bear the Madonna Trademarks; and,

  c. take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

 3) That Defendants account for, and pay to, Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged;

 4) For Judgment in favor of Plaintiff against Defendants that they have willfully infringed Plaintiff's rights in its federally registered trademarks, pursuant to 15 U.S.C. § 1114;

 5) That Plaintiff be awarded actual damages, statutory damages, and/or other available damages, at the election of Plaintiff; and that the amount of damages for infringement are increased by a sum not to exceed three times the amount thereof as provided by 15 U.S.C. § 1117;

 6) For Judgment in favor of Plaintiff against Defendants that they have: a) willfully infringed Plaintiff's rights in its federally registered trademarks; and, b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

 7) That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

 8) Any and all other relief that this Court deems just and proper.

| | |
|---|---|
| Dated: August 27, 2025 | Respectfully submitted, |
| | */s/ Gouthami V. Tufts* |
| | Ann Marie Sullivan |
| | Alison K. Carter |
| | Gouthami V Tufts |
| | John J. Mariane |

**SULLIVAN & CARTER, LLP**
111 W. Jackson Blvd., Ste. 1700
Chicago, Illinois 60604
www.scip.law
929-724-7529
g.tufts@scip.law

***ATTORNEYS FOR PLAINTIFF***